AKRON BAR ASSOCIATION *v.* DIETZ.

[Cite as *Akron Bar Assn. v. Dietz,*
**108 Ohio St.3d 343, 2006-Ohio-1067.**]

(No. 2005–1549—Submitted November 29, 2005—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} Respondent, David Robert Dietz of Cuyahoga Falls, Ohio, Attorney Registration No. 0020558, was admitted to the Ohio bar in 1982. On October 4, 2005, we imposed an interim suspension of his license to practice law under Gov.Bar R. V(5) after we received notice that respondent had been convicted of a felony offense. See *In re Dietz,* 106 Ohio St.3d 1527, 2005-Ohio-5296, 835 N.E.2d 377.

{¶ 2} On October 5, 2004, relator, Akron Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in April 2005. The panel then prepared written findings of fact and conclusions of law, which the board adopted, as well as a recommendation, which the board modified.

Misconduct

*Count I*

{¶ 3} Charles J. Boyd died in June 2001, and respondent was appointed executor of his estate in the Summit County Probate Court. In May 2002, respondent transferred $6,500 from the estate's bank account to his personal bank account. Two months later, respondent took an additional $4,500 from the account and deposited the funds into his own personal account. In December 2002, respondent removed another $2,500 from the estate's account and deposited the money into his own personal account.

{¶ 4} In March 2004, respondent filed an accounting with the probate court in which he claimed that there had been no disbursements from the Boyd estate, when in fact he had disbursed $13,500 from that estate to his own personal account in 2002.

{¶ 5} The board found that respondent had violated DR 1–102(A)(3) (barring illegal conduct involving moral turpitude), 1–102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct prejudicial to the administration of justice), and 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law).

## Count II

{¶ 6} The accounting that respondent filed with the probate court for the Boyd estate in March 2004 showed that the estate's bank account contained $14,215.88 on March 8, 2004. Although the bank account did contain funds in that amount on that date, the balance in the account had fallen to $593.10 the month before, and the accounting filed by respondent failed to reveal that fact. To bring the balance in the account up to the amount reflected in the accounting, respondent deposited $13,622.78 into the account on March 8, 2004. The money that he deposited came from another estate's account, and his transfer of funds from that other estate's bank account to the Boyd estate's bank account was improper.

{¶ 7} The board found that respondent had violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6).

## Count III

{¶ 8} Respondent was tardy in filing accountings for the Boyd estate with the probate court. At a court hearing on respondent's tardiness, respondent told the court that he had been unable to file the accounting because someone who worked in his office had lost or misplaced the relevant bank statements. Relator alleged in its complaint that this statement was untrue, but respondent denied that allegation in his answer.

{¶ 9} Although the board treated the allegations in the complaint as true and found that respondent had violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6), we find in the record no clear and convincing evidence proving that respondent committed the misconduct alleged in Count III of the complaint. We therefore dismiss that count.

## Count IV

{¶ 10} Susanne Doris Judson died in October 2003, and respondent was appointed executor of her estate in the Portage County Probate Court. The $13,622.78 that respondent deposited into the Boyd estate's bank account on

March 8, 2004—as described under Count II above—came from the Judson estate's bank account. The Portage County Probate Court had not authorized respondent to remove the funds from the Judson estate's account, and respondent's transfer of the funds resulted in the improper commingling of the assets of the two estates.

{¶ 11} The board found that respondent had violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 9–102(A) (requiring lawyers to maintain client funds in a separate, identifiable bank account), and 9–102(B)(3) (requiring lawyers to maintain complete records and appropriate accounts).

### Counts V and VI

{¶ 12} During relator's investigation of respondent's misconduct, respondent provided relator several untrue and deceptive statements about his actions. In particular, respondent told relator in February and March 2004 that he had not taken any funds from the Boyd estate's bank account, when in fact he had removed $13,500 from that account for his own use in 2002 as described under Count I above. He also failed to tell relator that he had improperly transferred funds from the Judson estate's bank account to the Boyd estate's account.

{¶ 13} The board found that respondent had violated DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6) and Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

### Count VII

{¶ 14} Frank Cypryla paid respondent $600 to represent him in a domestic-relations matter. Respondent performed no work on Cypryla's case, but deposited the funds into his business account rather than a client trust account. Also, a portion of the funds from Cypryla was intended to pay a court filing fee and should not have been deposited into respondent's business account even if he had provided services to Cypryla.

{¶ 15} The board found that respondent had violated DR 9–102(A).

### Sanction

{¶ 16} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, and gave false statements during relator's investigation. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), and (f).

{¶ 17} Among the mitigating factors cited by the board were respondent's lack of any prior disciplinary record and his payment of full restitution to the two estates from which he had taken money improperly. BCGD Proc.Reg. 10(B)(2)(a) and (c).

{¶ 18} Relator and respondent jointly recommended that respondent be suspended from the practice of law for two years, but the panel recommended to the board that respondent's license to practice law be indefinitely suspended. The board in turn recommended to this court that the respondent be permanently disbarred. The case is now before us on respondent's objections to the board's recommendation.

{¶ 19} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We conclude that respondent violated all of the provisions cited in the board's report (with the exception of Count III as explained above), but we disagree with the board's recommended sanction. The appropriate sanction in this case is an indefinite suspension.

{¶ 20} Respondent's withdrawals from the Boyd estate's account in 2002 were clearly improper, as he himself acknowledged at the hearing before the panel. He testified at that hearing that he took the $13,500 from the account because he "needed money." Respondent's behavior was selfish and dishonest, and his fund-shifting scheme involving the Boyd and Judson estate assets was antithetical to the duties of loyalty, integrity, and candor that he owed to the courts and his clients.

{¶ 21} Troubling as well is the lack of candor respondent displayed. He not only filed a fraudulent accounting with the probate court in Summit County, but he also lied to relator during the disciplinary process, stating repeatedly and on multiple occasions in early 2004 that he had not taken any funds from the Boyd estate or any other. Only after he was presented with copies of bank records did he acknowledge his misconduct.

{¶ 22} In many cases, we have disbarred attorneys who—like respondent—misappropriated client funds. See, e.g., *Disciplinary Counsel v. Lantz*, 102 Ohio St.3d 93, 2004-Ohio-1806, 807 N.E.2d 298, ¶ 16 (attorney engaged in a continuous course of neglect and misappropriation without restitution and then failed to cooperate in the disciplinary process); *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 694 N.E.2d 897 (attorney misappropriated funds from three clients and was convicted on federal criminal charges); *Cuyahoga Cty. Bar Assn. v. Churilla* (1997), 78 Ohio St.3d 348, 350, 678 N.E.2d 515 (attorney engaged in a "continued pattern of stealing from clients").

{¶ 23} Respondent's very serious misconduct in this case is tempered, however, by the mitigating factors cited in the board's report. He did repay the money

that he took from the two estates' accounts, and he charged no executor fees or attorney fees to either estate for the legitimate work that he had performed for them. Respondent had also practiced law for over 20 years with no disciplinary violations, and another Summit County lawyer testified at his disciplinary hearing about respondent's good character.

{¶ 24} In similar cases, we have imposed an indefinite suspension. See, e.g., *Akron Bar Assn. v. Holder*, 105 Ohio St.3d 443, 2005-Ohio-2695, 828 N.E.2d 621, ¶ 51 (mitigating factors included attorney's long and largely unblemished professional career and two letters supporting his good character); *Disciplinary Counsel v. Nagorny*, 105 Ohio St.3d 97, 2004-Ohio-6899, 822 N.E.2d 1233, ¶ 15 (noting several mitigating factors, including the attorney's payment of restitution); *Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129, ¶ 9 (describing attorney's unblemished 45–year career as a mitigating factor); *Columbus Bar Assn. v. Hamilton* (2000), 88 Ohio St.3d 330, 332, 725 N.E.2d 1116 (mitigating factors included the payment of restitution and the absence of any continuing pattern of misconduct).

{¶ 25} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

David M. Lowry and James M. Campbell, for relator.

Donald S. Varian Jr., for respondent.