**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Trumbull Cty. Bar Assn. v. Roland,* **Slip Opinion No. 2016-Ohio-5579.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5579

TRUMBULL COUNTY BAR ASSOCIATION *v.* ROLAND.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Trumbull Cty. Bar Assn. v. Roland,* Slip Opinion No. 2016-Ohio-5579.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Permanent disbarment.*

(No. 2016-0257—Submitted April 5, 2016—Decided August 31, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-054.

_____

**Per Curiam.**

**{¶ 1}** Respondent, David Keith Roland, of Hubbard, Ohio, Attorney Registration No. 0037125, was admitted to the practice of law in Ohio in 1986. In a July 3, 2014 complaint, relator, Trumbull County Bar Association, charged Roland with multiple violations of the Rules of Professional Conduct arising from his participation in a scheme to conceal more than $850,000 of a client's marital

assets from the client's husband before and during the client's divorce proceeding. Relator twice amended its complaint to add additional allegations of misconduct arising from Roland's failure to advise clients that he did not maintain professional liability insurance, his failure to deposit retainers into his client trust account, his failure to provide contracted legal services, and his failure to cooperate in the ensuing disciplinary investigations. Roland answered the complaints, largely denying the allegations against him, but did not otherwise participate in the disciplinary proceedings.

{¶ 2} On September 8, 2015, the chairperson of the panel appointed to hear this disciplinary matter granted relator's motion to deem admitted the facts set forth in its February 23, 2015 requests for admission. Approximately six weeks later, we found Roland in contempt for his failure to comply with the panel chairperson's June 25, 2015 order to produce discovery responses. *Trumbull Cty. Bar Assn. Certified Grievance Commt. v. Roland*, 143 Ohio St.3d 1491, 2015-Ohio-4364, 39 N.E.3d 527. And on November 3, 2015, we suspended Roland's license to practice law for his failure to register for the 2015-2017 biennium. *In re Attorney Registration Suspension of Roland*, 143 Ohio St.3d 1509, 2015-Ohio-4567, 39 N.E.3d 1277. That suspension remains in effect.

{¶ 3} Roland did not attend the panel hearing. Based on the facts deemed admitted, relator's exhibits, and testimony from the former husband from whom Roland helped his client conceal marital assets, the panel found that Roland committed most but not all of the charged misconduct, and weighing the aggravating and mitigating factors, recommended that he be permanently disbarred. The board adopted the panel report in its entirety. We adopt the board's findings of fact, misconduct, and aggravating and mitigating factors and permanently disbar Roland.

**Misconduct**

*Count One: The Carradine Matter*

**{¶ 4}** Roland performed legal services for Denise Carradine before and after her husband, Eric Martin, filed for divorce. Based on Roland's failure to comply with relator's discovery requests—including requests for admissions—and his subsequent failure to comply with the panel chairperson's order directing him to comply, the panel chairperson issued an order deeming certain facts admitted.

**{¶ 5}** The facts deemed admitted are summarized as follows. Carradine paid Roland over $850,000 between 2006 and 2009. Those funds were not payments for legal services or advancements but were instead funds that Roland and Carradine had agreed to place in Roland's client trust account for the purpose of hiding marital assets from Martin. By April 9, 2009, Roland had transferred $814,105.96 of those funds to an account at Maerki Baumann & Co. in Zurich, Switzerland, in which Carradine had a beneficial interest.

**{¶ 6}** In addition to the facts deemed admitted, the board found that Roland had been joined as a third-party defendant in the Martin-Carradine divorce proceeding and that the following findings and conclusions of the court in that proceeding are relevant here. *See Martin v. Carradine*, Trumbull C.P. No. 2009 DR 333 (Feb. 15, 2011). In particular, from August 2006 through April 9, 2009, Carradine transferred $854,261.10 to Roland by engaging in a regular pattern and practice of withdrawing cash from her business or personal accounts payable to herself or "cash" and combining the funds from those checks to form a new check—typically for less than $10,000—that she made payable to Roland. Carradine's practice of transferring the funds in small increments was evidence that she purposefully structured the transactions to avoid detection under banking laws. The funds were deposited into Roland's two client trust accounts, and $814,105.96 was then wire-transferred to an account in the name of Renaissance Investment Services, Inc., at Maerki Baumann & Co. in Zurich, in which Carradine had a

beneficial interest.  Banking records demonstrated that a portion of those funds was transferred to another account located in the Turks & Caicos Islands during the pendency of the divorce proceedings.

{¶ 7} As of December 11, 2013, all of Carradine's funds had been removed from Roland's client trust account at First National Bank in Pennsylvania and the account was closed.  And on June 30, 2015, Roland's client trust account at Huntington National Bank had a balance of just $709.57, which included a June 23, 2015 deposit of $643.44.  Of the $854,261.10 transferred by Carradine to Roland and deposited into his client trust accounts, $40,155.14 remains unaccounted for.

{¶ 8} On these facts, the board found that Roland violated Prof.Cond.R. 1.2(d) (prohibiting a lawyer from counseling a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent), and 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property) as charged in the complaint.  At the hearing, the board permitted relator to amend its complaint to conform it to the evidence by adding allegations that Roland's conduct violated Prof.Cond.R. 1.15(e) (requiring a lawyer in possession of funds in which two or more persons claim an interest to hold those funds in his client trust account until the dispute is resolved) and 8.4(c)  (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).  The board also found that relator had proven those violations by clear and convincing evidence.

*Count Two: The Wolk Matter*

{¶ 9} The facts deemed admitted as to Count Two are summarized as follows.  Roland performed legal services for Mark and Marcia Wolk.  Roland did not maintain professional liability insurance in the amounts of $100,000 per occurrence and $300,000 in the aggregate, nor did he notify the Wolks that he did not have that coverage.   Therefore, the board found that Roland violated

4

Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance).

*Counts Three and Four: The Donatelli and Villas at Heron's Landing Matters*

{¶ 10} On July 8, 2013, Richard J. Donatelli paid Roland a retainer of $750 to file a lawsuit on his behalf. And on October 15, 2013, Ernest C. Ramhoff, an officer of the Villas at Heron's Landing condominium association, paid Roland $750 to file two civil complaints on behalf of the association. Relator appointed Robert L. Root III to investigate grievances filed against Roland by Donatelli and Ramhoff.[1] Root reviewed court dockets for the court in which Roland could have filed complaints on behalf of both Donatelli and Villas at Heron's Landing but did not find such complaints. Roland did not respond to Root's letters inquiring about the Donatelli or Ramhoff grievances, and when Root reached him by telephone and identified himself, Roland stated that he was with clients and abruptly hung up.

{¶ 11} As stated above with respect to Count One, as of December 11, 2013, all funds had been removed from Roland's client trust account with First National Bank and the account was closed.

{¶ 12} On these facts, the board found that in both the Donatelli and Villas at Heron's Landing matters, Roland violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(d) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). In the absence of

---

[1] As noted below, relator did not offer testimony or any other evidence from either Donatelli or Ramhoff. Therefore, the record does not reflect the nature of their grievances or what led to their filing.

any testimony regarding Roland's communication with these clients or the reasonableness of his fees, however, we accept the board's recommendation that we dismiss alleged violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) and 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee).

**Sanction**

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

**{¶ 14}** As aggravating factors, the board found that Roland acted with a dishonest or selfish motive, engaged in a pattern of misconduct over a period of years, committed multiple offenses, failed to cooperate in the disciplinary process, failed to acknowledge the wrongful nature of his misconduct, caused harm to vulnerable persons—particularly Martin—and made no effort to make restitution. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (5), (7), (8), and (9). The only arguably mitigating factors noted by the board were the absence of a prior disciplinary record and the absence of a dishonest or selfish motive with respect to Count Two. *See* Gov.Bar R. V(13)(C)(1) and (2). The board accorded those factors little weight, however, given the dishonest or selfish motive behind Roland's misconduct that was charged in the three remaining counts and the attorney-registration suspension we imposed on him during the pendency of this proceeding.

**{¶ 15}** The board cited numerous cases imposing sanctions for misconduct comparable to discrete aspects of Roland's misconduct. The least severe sanction was a one-year suspension, fully stayed on conditions. We imposed that sanction on an attorney who engaged in conduct that was prejudicial to the administration of justice and that adversely reflected on the lawyer's fitness to practice law by

neglecting the legal matters of two clients, failing to keep one client reasonably informed about the status of the client's case, failing to deposit prepaid expenses and legal fees into a client trust account, failing to promptly comply with a client's reasonable requests for information, and initially failing to cooperate in the ensuing disciplinary investigation. *Disciplinary Counsel v. Oberholtzer*, 136 Ohio St.3d 314, 2013-Ohio-3706, 995 N.E.2d 217. But Oberholtzer's misconduct affected just two client matters and did not involve the misappropriation of more than $40,000, as Roland's did. Moreover, Oberholtzer presented evidence of personal illness and life events that affected his representation of his clients, and he ultimately cooperated in the disciplinary proceedings by entering into comprehensive stipulations with the relator. *Id*. at ¶ 31-32.

{¶ 16} At the opposite end of the spectrum, the board cited several cases in which we permanently disbarred attorneys who engaged in misconduct comparable to that of Roland. In *Disciplinary Counsel v. Crosby*, 132 Ohio St.3d 387, 2012-Ohio-2872, 972 N.E.2d 574, the attorney had pleaded guilty to federal charges of attempted income-tax evasion, having failed to file federal income-tax returns for six years, and was ordered to make restitution of more than $300,000 to the Internal Revenue Service. In addition, he had settled a case without seeking authorization from his clients and had distributed the settlement proceeds, which had been identified as an asset in one client's bankruptcy proceeding, without the knowledge or consent of the bankruptcy court. He also had failed to advise his clients that he did not maintain malpractice insurance, failed to maintain complete records of all client funds in his possession, and misappropriated $80,000 in client funds.

{¶ 17} And in *Disciplinary Counsel v. Tomson*, 136 Ohio St.3d 71, 2013-Ohio-2154, 990 N.E.2d 579, we disbarred an attorney who agreed to pursue postconviction relief on behalf of two clients and collected thousands of dollars in fees over more than five years, while falsely claiming that he was working to secure

reductions in their criminal sentences. He also failed to cooperate in the ensuing disciplinary investigation.

**{¶ 18}** We have consistently recognized that when an attorney's neglect of legal matters is coupled with a failure to cooperate in the ensuing disciplinary investigation, an indefinite suspension is warranted. *See*, *e.g.*, *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10; *Cleveland Bar Assn. v. Judge*, 94 Ohio St.3d 331, 332, 763 N.E.2d 114 (2002). However, when such conduct is accompanied by the misappropriation of client funds and fraudulent or dishonest conduct, as it is here, we have held that disbarment is the appropriate sanction. *See*, *e.g.*, *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 421, 2011-Ohio-1483, 945 N.E.2d 1034, ¶ 22-25.

**{¶ 19}** Having considered Roland's misconduct, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, we agree that the only appropriate sanction in this case is permanent disbarment.

**{¶ 20}** Accordingly, David Keith Roland is permanently disbarred from the practice of law in Ohio. Costs are taxed to Roland.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Flevares Law Firm, L.L.C., and William M. Flevares; and Randil J. Rudloff, for relator.

David Keith Roland, pro se.

————————————