**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Disciplinary Counsel v. Little,* **Slip Opinion No. 2017-Ohio-6871.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-6871

DISCIPLINARY COUNSEL *v.* LITTLE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Little,* Slip Opinion No. 2017-Ohio-6871.]**

*Attorneys—Misconduct—Misappropriation of client funds—Commingling of lawyer and client funds—Failure to maintain proper records of client funds—Attorney permanently disbarred.*

(No. 2016-1838—Submitted March 1, 2017—Decided July 20, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-011.

_____

**Per Curiam.**

{¶ 1} Respondent, Shawn Andrea Little, of Columbus, Ohio, Attorney Registration No. 0055899, was admitted to the practice of law in Ohio in 1991. In a 25-count complaint, relator, disciplinary counsel, charged her with misappropriating over $363,000 in settlement funds relating to numerous client

matters and failing to maintain adequate records for her client trust account. Little stipulated to the charged misconduct, and after a hearing, the Board of Professional Conduct issued a report adopting the parties' stipulations and recommending that we permanently disbar her from the practice of law in Ohio. No party filed objections to the board's report and recommendation.

{¶ 2} Upon our review of the record, we accept the board's findings of misconduct and agree with its recommended sanction.

**Misconduct**

{¶ 3} According to the parties' stipulations, from 2007 to 2014, Little primarily represented plaintiffs in personal-injury cases. During that time period, she misappropriated $363,444.30 in settlement funds in 23 separate client matters. With one exception, she engaged in a similar pattern of misconduct in each of those client matters. Specifically, after settling her clients' cases, she deposited the settlement funds into her client trust account and paid out her clients' share and amounts for her attorney fees—if she charged a fee—and other expenses. However, she wrongfully withheld all or portions of the remaining settlement amounts that should have been either paid to various lienholders or co-counsel or held in trust pending discovery of any additional liens.

{¶ 4} Counts 14 and 16 in relator's complaint are representative examples of Little's misconduct. As alleged in count 14, she represented James Boyd in a personal-injury matter and obtained a settlement of $25,673.88. After depositing those funds into her client trust account, she disbursed $11,000 to Boyd, $8,557.10 for attorney fees, and $1,277.95 for expenses. She retained the balance—$4,838.83—to pay various liens from medical providers. But rather than paying those liens, she misappropriated the funds.

{¶ 5} Similarly, as alleged in count 16, Little represented Corinne, Matt, and Kathy McIntire in personal-injury matters and obtained a settlement of $637,500. After depositing those funds into her client trust account, she disbursed

2

$207,659.52 to the McIntires, $207,659.52 for attorney fees, and $12,869.21 for expenses. She retained the balance to pay liens and expenses. But rather than paying a lien of $201,048.43, she misappropriated the funds. And later, she used a portion of those funds to pay a lien in an unrelated case.

{¶ 6} The amounts that Little misappropriated in the 23 client matters ranged from $3.80 in one case to $201,048.43 in the McIntires' case. In most of the matters, she stole between $500 and $11,000 from her clients' settlement funds. In addition to using the misappropriated funds to pay liens in unrelated cases, she also used the money for her own personal and professional benefit, including to pay office-related expenses.

{¶ 7} As noted above, Little's misconduct in one of the 23 client matters identified in relator's complaint was slightly different than the others. As alleged in count 11, she represented Ashley Ruth in a personal-injury matter and after settling the case, she deposited $440,890.19 into her client trust account. She should have disbursed $281,951.80 to Ruth but instead disbursed only $281,451.79, and therefore misappropriated $500 from her client. Little also failed to promptly withdraw her share of attorney fees from her client trust account, and she ultimately withdrew only $43,899 of the $75,000 in fees that she was entitled to, which resulted in her commingling personal and client funds.

{¶ 8} In September 2014, Little self-reported her misconduct to relator and later commenced repaying some of the amount that she had stolen. At the time that the parties entered into stipulations, Little still owed $104,989.65 in restitution. She also admitted that since 2007, she had failed to maintain required ledgers for her client trust account, which made it difficult to determine the source and purpose of many of her transactions.

{¶ 9} The parties stipulated and the board found that Little committed one violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property)

for commingling client and lawyer funds in her trust account, one violation of Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held) for failing to maintain client ledgers for funds deposited in her trust account, 23 violations of Prof.Cond.R. 1.15(d) (requiring a lawyer, upon receiving funds in which a client or third party has a lawful interest, to notify the client or third person and promptly deliver those funds to the intended recipient), and 23 violations of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) for misappropriating her clients' settlement funds. The board also found that the duration and scope of Little's misconduct was so egregious that it warranted finding a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

{¶ 10} We agree with these findings of misconduct.

## Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

### *Aggravating and mitigating factors*

{¶ 12} As aggravating factors, the board found that Little had a dishonest or selfish motive, committed multiple offenses, and engaged in a pattern of misconduct and that the victims of her misappropriation were vulnerable clients. *See* Gov.Bar R. V(13)(B)(2) through (4) and (8). We also note that she failed to make full restitution. *See* Gov.Bar R. V(13)(B)(9). In mitigation, the board determined that Little has no prior discipline and that she made full and free

disclosures to the board and cooperated in the disciplinary process. *See* Gov.Bar R. V(13)(C)(1) and (4).

*Applicable precedent*

**{¶ 13}** Disbarment is the presumptive sanction for an attorney's misappropriation of client funds, although significant mitigating factors may weigh in favor of a lesser sanction. *Disciplinary Counsel v. Leksan*, 136 Ohio St.3d 85, 2013-Ohio-2415, 990 N.E.2d 591, ¶ 30. Here, the board found no reason to deviate from the presumptive sanction, noting that Little had not yet made full restitution, she presented no evidence of a disorder that contributed to her misconduct, and she was "not contrite" at her disciplinary hearing. Indeed, the board characterized one portion of her testimony as "disingenuous, misleading, and manipulative" and agreed with relator's description of her conduct as " 'cold and calculated' in that she selectively stole funds under circumstances where the clients were not likely to complain."

**{¶ 14}** Because Little misappropriated $363,444 over a seven-year period, the board concluded that the circumstances here are "most closely aligned" with the facts in *Disciplinary Counsel v. Becker*, 140 Ohio St.3d 299, 2014-Ohio-3665, 17 N.E.3d 583, and *Trumbull Cty. Bar Assn. v. Roland*, 147 Ohio St.3d 274, 2016-Ohio-5579, 63 N.E.3d 1200, both of which resulted in the attorneys' disbarment. In *Becker*, the attorney misappropriated tens of thousands of dollars entrusted to him as a fiduciary for his disabled nephew's estate and his elderly aunt's finances and estate, and he also misappropriated funds from his law firm. The misappropriation occurred over an extended period of time, and Becker used the money primarily to feed an untreated gambling addiction. *Becker* at ¶ 4-23, 26. In *Roland*, the attorney participated in an elaborate scheme to conceal more than $850,000 of a client's marital assets from the client's husband. Specifically, over a three-year period, the client transferred small incremental amounts to Roland, who deposited the money into his client trust accounts and later wire-transferred

the funds to Switzerland. Additional misconduct included Roland's accepting retainers from two clients and failing to perform the work. *See Roland* at ¶ 4-12. In both cases, the attorneys failed to make restitution. *Becker* at ¶ 24; *Roland* at ¶ 14.

{¶ 15} Given the extent and duration of Little's misappropriations—and that she has not made full restitution—we agree that permanent disbarment is the only appropriate sanction in this case. As we have previously explained, "No circumstances ever justify the deliberate misappropriation of client's funds for a lawyer's personal benefit," and "[t]he continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998).

## Conclusion

{¶ 16} Having considered Little's misconduct, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, we accept the board's recommended sanction. Shawn Andrea Little is permanently disbarred from the practice of law in Ohio. Costs are taxed to Little.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Kendo and Dulaney, L.L.P., and William Mann, for respondent.

_____